IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter D. Kolenich, : 
               Petitioner : 
                : 
          v. : No. 18 C.D. 2021
                : Argued: October 21, 2021
Unemployment Compensation Board : 
of Review, : 
               Respondent : 


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
               HONORABLE J. ANDREW CROMPTON, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE LEAVITT                         FILED: December 14, 2021

Peter D. Kolenich (Claimant) petitions for this Court's review of an adjudication of the Unemployment Compensation Board of Review (Board) that denied his claim for unemployment compensation benefits, which he sought after two of his three part-time university employers terminated his employment. The Board held that Section 402.1(1) of the Unemployment Compensation Law (Law)[1] barred his claim because one of the three university employers gave him reasonable assurance of a part-time position in the fall semester. We reverse.

In the spring semester of the 2019-2020 academic year, Carnegie Mellon University (Carnegie Mellon) employed Claimant as a part-time adjunct professor. On April 6, 2020, Carnegie Mellon offered Claimant continued employment for the fall, *i.e.*, from September 1, 2020, through December 31, 2020. Claimant signed Carnegie Mellon's reasonable assurance letter on April 6, 2020.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by the Act of July 6, 1977, P.L. 41, 43 P.S. §802.1(1).

During the spring semester of 2020, Claimant also worked as a part-time adjunct professor for Chatham College (Chatham) and Duquesne University (Duquesne). Neither institution offered Claimant employment for the fall semester of 2020. On May 24, 2020, Claimant filed a claim for unemployment compensation benefits and listed all three schools as separating employers, since he had no work after April. The Duquesne UC Service Center (Service Center) issued three notices of determination on Claimant's application for unemployment benefits.[2]

In its determination of August 19, 2020, the Service Center found Claimant ineligible for benefits because Carnegie Mellon gave him "reasonable assurance" that he was going to "return to work following the break between terms under similar economic terms and conditions as to prior to the break." Certified Record (C.R.), Item No. 4, Notice of Determination, 8/19/2020, at 1. The determination also stated as follows:

> Important: If you receive multiple determinations ruling on the same week or weeks and *one is eligible and the other is ineligible, the ineligible determination takes precedence*.

*Id*. (emphasis added). On August 31, 2020, the Service Center issued another determination finding Claimant eligible for benefits and listing Claimant's earnings from Chatham and Duquesne but not from Carnegie Mellon. Finally, on September 8, 2020, the Service Center issued a third determination finding Claimant eligible

---

[2] The determinations of August 31, 2020, and September 8, 2020, were not admitted into the record before the Referee. Claimant, who appeared before the Referee *pro se*, testified that he appealed the three determinations. After the Referee issued a decision, Claimant's counsel asked the Board to take judicial notice of these determinations. Claimant Brief in Support of Appeal, at 4; Certified Record (C.R.) 184. Thus, the August 31, 2020, and September 8, 2020, notices of determination are part of the certified record on appeal but were not referenced in the Referee's findings of fact.

for benefits and listed his earnings from all three employers, Chatham, Duquesne, and Carnegie Mellon.

Uncertain of how to put the three determinations together, Claimant appealed the Service Center's determination of August 19, 2020. Claimant explained his uncertainty as follows:

> I have worked for 3 universities over the past year … I agree that I have not been unemployed from Carnegie Mellon since, at that school, I teach in an academic program that follows a typical fall-spring semester schedule. [F]ortunately, [it] will have some students this fall, so I will be able to return to work…. I received 3 determination letters: 1 denial, and 2 that state that I am eligible. *The letters also say that the ineligible determination takes precedence, so it sounds like I will not be getting any unemployment benefits.* If I am mistaken, I apologize for taking up your time. If I am correct, I would like to appeal that decision and ask for compensation for the weeks I have been uncharacteristically unemployed.

C.R., Item No. 5, Claimant's Petition for Appeal from Determination with Attachments, 8/24/2020, at 3-4 (emphasis added).

On September 21, 2020, the Referee conducted a hearing on the matter. At the hearing, Carnegie Mellon presented the testimony of its human relations officer, Jennifer May, and Claimant testified on his own behalf. Neither Chatham nor Duquesne participated.

May testified that Claimant worked for Carnegie Mellon as an adjunct instructor in the 2019-2020 academic year, and on April 6, 2020, he was offered employment for the 2020-2021 academic year. On September 1, 2020, Claimant returned to work and was still working as of the date of the hearing. May explained that teaching assignments to adjunct professors change from semester to semester,

depending upon enrollment. Accordingly, Carnegie Mellon could assign Claimant to teach three classes one semester and two classes the next semester.

Claimant testified that he appealed the August 19, 2020, determination because the Service Center found him ineligible for any unemployment benefits notwithstanding his unexpected loss of employment at Chatham and Duquesne. Claimant explained that he teaches English as a second language at Chatham and Duquesne, and he teaches communications in the School of Computer Science at Carnegie Mellon. At Carnegie Mellon, Claimant teaches in the graduate program that offers classes year-round because it is a 16-month program, comprised of four terms in a row. Claimant generally teaches only the first two terms. He became unemployed as of April 2020 but returned to work for Carnegie Mellon in the fall of 2020.

The Referee denied Claimant unemployment compensation benefits. The Referee reasoned that because Claimant received reasonable assurance of employment from one of his three employers, *i.e.*, Carnegie Mellon, this precluded "all school wages from being used for the purposes of financial eligibility for unemployment benefits, during the summer, which is between academic terms." Referee Decision, 12/18/2020, at 2-3. Claimant appealed the Referee's decision to the Board, arguing that only his wages from Carnegie Mellon should be excluded in determining his eligibility for unemployment benefits.

The Board rejected Claimant's appeal. It adopted the Referee's conclusion and then stated:

> The Board adds a finding, which shall read, "The claimant did not expect to have work from the employer over the summer." The Board adds a finding, which shall read, "Adjunct professors are not guaranteed summer work and only get it if work becomes available."

4

Board Adjudication, 12/18/2020, at 1. The Board also rejected Claimant's argument that it should follow guidance from the United States Department of Labor that would have allowed his wages from Chatham and Duquesne to be used to determine Claimant's eligibility for unemployment benefits. The Board characterized this guidance as "not binding." *Id.*

Claimant then petitioned for this Court's review.[3] On appeal, he raises two issues. First, he argues that the Board erred in holding that under Section 402.1(1) of the Law, his ineligibility determination as to Carnegie Mellon took precedence over his two eligibility determinations as to Chatham and Duquesne. Second, he argues that Section 402.1(1) of the Law, as applied by the Board, violates equal protection of the law because it treats teachers differently, depending on whether their second employer is not a school.

We begin with a review of the relevant legal principles. Section 402.1 of the Law states, in relevant part, as follows:

> *Benefits based on service for educational institutions* pursuant to Article X, XI or XII *shall as hereinafter provided be payable in the same amount*, on the same terms and subject to the same conditions as outlined in section 404(g) [43 P.S. §804 (relating to rate and amount of compensation)]; *except that*:
>
> > (1) With respect to *service performed after December 31, 1977, in an instructional*, research, or principal administrative *capacity for an educational institution*, *benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years*, or during a similar

---

[3] This Court's review determines whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. *Miller v. Unemployment Compensation Board of Review*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014).

5

period between two regular terms whether or not successive or during a period of paid sabbatical leave provided for in the individual's contract, to any individual *if such individual performs such services* in the first of such academic years or terms *and* if *there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms*.

43 P.S. §802.1(1) (emphasis added). The basic principle is that "service for educational institutions" qualifies for unemployment benefits. There is an exception in subsection (1) for benefits that would otherwise be payable during a school break, so long as the employee receives "reasonable assurance" of a job after the break. Where school employees are "reasonably assured of resuming employment in a learning institution" after a break, they are disqualified from receiving benefits during the break. *Penn Hills School District v. Unemployment Compensation Board of Review*, 437 A.2d 1213, 1217 (Pa. 1981).

The Pennsylvania Department of Labor and Industry has explained its application of Section 402.1(1) for the specific circumstance where, as here, the employee is a teacher who works for more than one employer. The Department's published guidance states as follows:

When a claimant has earned both school and nonschool wages during the base-year period and has been denied benefits under the provisions of Section 402.1, financial eligibility for the denial period must be recomputed using solely the nonschool wages. *After the recomputation, a school employee who is financially eligible based solely on his or her nonschool wages may collect [Unemployment Compensation] UC during the denial period if he or she is otherwise eligible for benefits*.

Generally, if the claimant works for more than one school employer, the denial period under Section 402.1 begins with the

6

first school out and ends with the last school back. *In addition, if the claimant works for more than one school employer and has reasonable assurance with at least one school employer, the claimant cannot use any school wages to establish financial eligibility during the denial period.*

School Employees, Benefit Eligibility, OFFICE OF UNEMPLOYMENT COMPENSATION, at https://www.uc.pa.gov/unemployment-benefits/Am-I-Eligible/benefit-eligibility/Pages/School-Employees.aspx (last visited 12/13/2021) (emphasis added). Stated otherwise, a teacher who loses a second job with a non-school employer is eligible for unemployment benefits, but a teacher who loses a second job with a school employer is ineligible.

Claimant contends that the Board's above-stated interpretation of Section 402.1(1) is at odds with the precept that the Law is to be liberally construed in favor of employees who find themselves unemployed through no fault of their own. Section 3 of the Law, 43 P.S. §752 ("Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own."). He argues that the exception to eligibility for benefits set forth in Section 402.1(1) is limited to "*an* educational institution" that gave reasonable assurance, *i.e.*, Carnegie Mellon, but it does not apply to "an educational institution" that did not, *i.e.*, Chatham and Duquesne. His permanent and unexpected loss of employment with Chatham and Duquesne entitles him to unemployment benefits. Additionally, he argues that the Board's construction of Section 402.1(1) is discriminatory. He argues there is no reason to treat teachers who work for multiple school employers differently from teachers who work for multiple employers, some of which are educational institutions, and some of which are not.

7

In support of his statutory construction argument, Claimant observes that Section 402.1(1) was copied almost verbatim from the Federal Unemployment Tax Act (FUTA), 26 U.S.C. §3304(a)(6)(A)(i).[4] The United States Department of Labor has construed the federal statutory paradigm to allow for the payment of benefits in circumstances where the teacher, who works for multiple school employers, does not receive reasonable assurance from all of those school employers. This construction was set forth in a letter ruling.[5] Claimant also observes

---

[4] Section 3304(a)(6)(A)(i) of FUTA states as follows:

(a) Requirements.--The Secretary of Labor shall approve any State law submitted to him, within 30 days of such submission, which he finds provides that—

* * *

(6)(A) compensation is payable on the basis of service to which section 3309(a)(1) applies, in the same amount, on the same terms, and subject to the same conditions as compensation payable on the basis of other service subject to such law; except that--

(i) with respect to services in an instructional, research, or, principal administrative capacity for an educational institution to which section 3309(a)(1) [26 U.S.C. §3309(a)(1) (relating to state law coverage for services provided to government entities,] applies, compensation shall not be payable based on such services for any week commencing during the period between two successive academic years or terms (or, when an agreement provides instead for a similar period between two regular but not successive terms, during such period) to any individual if such individual performs such services in the first of such academic years (or terms) and if there is a contract or reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms[.]

26 U.S.C. §3304(a)(6)(A)(i).

[5] The Unemployment Insurance Program Letter (UIPL) No. 5-17 states, in relevant part:

(d) Guidance for Making the Determination

* * *

(5) Multiple-employer situations--Some claimants subject to the between and within denial provisions provide services for more than one educational employer *… if the claimant has a contract or reasonable assurance with at least one but not*

8

that the State of New York limits the claimant's ineligibility to the school that gives reasonable assurance, not the school that does not. Wages from the separating school that does not give reasonable assurances can be used to calculate benefits.[6]

The Board responds that under Section 402.1(1) of the Law, an employee is ineligible for benefits if he has reasonable assurance that he "will perform services in any such capacity *for any educational institution* in the second of such academic years or terms." 43 P.S. §802.1(1) (emphasis added). It argues that the use of the article "any" before "educational institution" means that if an

*all employers, states have two options* when determining which services would be the basis for the UC payments.

a. Option 1: *The state determines UC eligibility* between or within terms, in accordance with state law, *based on the services performed for the employer(s) for which there is no "contract" or "reasonable assurance."* The services for the educational employers for which there is a "contract" or "reasonable assurance" are not available for determining eligibility for UC between terms.

b. Option 2: The state agency looks at all of the services and determines whether, as a whole, the economic conditions prerequisite requirement is met. *If it is, UC is not payable between or within terms based on any of these services.* If the economic conditions requirement is not met, all of these services would be used to determine eligibility for UC. (If the state uses this option, the state may, if permitted under state law, determine that the unemployment is not attributable *to those educational employers who provided a contract or reasonable assurance and relieve them of charges or reimbursement for their portion of the UC paid in* accordance with UIPL Nos. 21-80 and 44-93.)

UIPL No. 5-17, 12/22/2016, at 7-8. *See* UNITED STATES DEPARTMENT OF LABOR, EMPLOYMENT & TRAINING ADMINISTRATION, https://wdr.doleta.gov/directives/attach/UIPL/UIPL_5-17.pdf (last visited 12/13/2021) (emphasis added).

[6] On June 29, 2020, Claimant filed an application asking this Court to take judicial notice of the UIPL No. 5-17; the webpage of the Commonwealth of Pennsylvania, Department of Labor and Industry showing its policy statements regarding its approach to payment of benefits for claimants earning school and non-school wages; and the webpage of the New York Department of Labor that follows the approach provided in the UIPL No. 5-17. The Board opposes the request because Claimant did not ask the Referee to take judicial notice of these documents. Board Brief at 27-28.

employee has reasonable assurance from "even one school employer, the claimant cannot use any school wages to establish financial eligibility." Board Brief at 9. It argues that the phrase "any such capacity" coupled with "any educational institution" signifies an intention to treat wages earned in a school differently from non-school wages, which does not offend equal protection principles. The Board argues that if a teacher has "at least one job available for the following year or term, he is not eligible for benefits during the break." *Id*. at 17. It further argues that its construction of Section 402.1(1) is entitled to deference.[7]

This case turns on the intent of Section 402.1(1) of the Law, which states, in relevant part, as follows:

> With respect to service performed … in *an* instructional, research, or principal administrative capacity for *an educational institution*, benefits shall not be paid *based on such services* for any week of unemployment … to any individual *if such individual performs such services* in the first of such academic years or terms *and* if *there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution* in the second of such academic years or terms.

43 P.S. §802.1(1) (emphasis added). The word "an" denotes a singular employee, working in "an" instructional capacity for "an" educational institution. The sentence is written in the singular. *Id*. If "an" employee receives reasonable assurance that he will perform "such services" (as a teacher) after the break for "an" educational

---

[7] The Board argues that the Department's interpretation published on its website is a policy that is entitled to this Court's deference. *See Harmon v. Unemployment Compensation Board of Review*, 207 A.3d 292 (Pa. 2019). By contrast, the guidance for the United States Department of Labor has little persuasive value in Pennsylvania. *See Montgomery County Head Start v. Unemployment Compensation Board of Review*, 938 A.2d 1137 (Pa. Cmwlth. 2007); *Glassmire v. Unemployment Compensation Board of Review*, 856 A.2d 269 (Pa. Cmwlth. 2004).

10

institution, the employee is ineligible for benefits. The obverse is also the case. If "an employee" does not receive reasonable assurance that he will perform "such services" (as a teacher) after the break for an educational institution, then the employee is eligible for benefits. Two institutions, Chatham and Duquesne, did not provide Claimant with reasonable assurance that he would perform "such services" after the break. Further, Claimant does not have a contract from "any educational institution" to perform the services in the fall that he provided at Chatham and Duquesne in the spring term. Simply, the exception provided in Section 402.1(1) of the Law does not apply to wages Claimant earned at Chatham and Duquesne.

The Board construed the phrase "any educational institution" to mean one of several educational institutions that employed a teacher in the first term. We disagree. "Any educational institution" means simply a new employer. In that case, the school that employed the teacher in the first term for "such services" will not give him a contract or reasonable assurance letter. However, because he has a "contract" from a new school to provide "such services" for the fall semester, he is not eligible for benefits. 43 P.S. §802.1(1).

The Board failed to consider that Section 402.1(1) is addressed to a singular teacher at a single educational institution. Instead, the Board gives a broad construction to the exception in Section 402.1(1) from eligibility for benefits. However, exceptions in a statute are to be narrowly construed. *See Phillips v. State Ethics Commission*, 470 A.2d 659, 661 (Pa. Cmwlth. 1984) (stating that "remedial legislation [] is to be liberally construed … and exclusions under the [a]ct should be narrowly, rather than broadly, determined"); *see also, e.g.*, *Penn Hills School District*, 437 A.2d at 1215 (holding that an unemployed worker can be denied

11

benefits only by explicit language in the Law that clearly and plainly excludes coverage).

Although not a model of clarity, Section 402.1(1) was intended to preclude benefits in the case of the anticipated and temporary loss of wages during school breaks commonly incurred by a professional employed by educational institutions, but not for a permanent and unanticipated loss of wages from an educational institution. This view is reinforced by the statute's focus on benefits paid during the period between school years, semesters or such breaks as sabbaticals, as well as by the Law's underlying purpose to provide a safety net for those unemployed through no fault or design of their own. 43 P.S. §752. Construing the phrase "reasonable assurance [of employment after the break by] *any educational institution*" to apply to the situation in which a teacher loses a job in one school but secures a job in another school for the period after the break is consistent with this statutory intent. The Board's application of Section 402.1(1) to the circumstance where there is a permanent and unanticipated loss of employment at an educational institution does not accord with language of Section 402.1(1) or the underlying purpose of the Law.

This case turns on the intent of Section 402.1(1) of the Law, as expressed in its words. 1 Pa. C.S. §1921(a). We hold that Claimant's loss of employment at Chatham and Duquesne did not trigger the exception in Section 402.1(1) of the Law because neither educational institution gave him reasonable assurance of employment in the next term.[8] Nor did he have reasonable assurance

---

[8] Because we hold that the Board erred, we need not address Claimant's constitutional issue. Likewise, we need not decide Claimant's request to take judicial notice of UIPL No. 5-17 and the State of New York's position. The law is evidence of itself, and thus, judicial notice is unnecessary. In any case, we agree with the Board that the construction of the United States Department of Labor is not binding. *Glassmire*, 856 A.2d 269.

of employment from "any educational institution" in the next term to do the work he had done at Chatham and Duquesne.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter D. Kolenich,                 :
             Petitioner       :
                          :
        v.                 :    No. 18 C.D. 2021
                          :
Unemployment Compensation Board   :
of Review,                      :
             Respondent    :

# **O R D E R**

AND NOW, this 14th day of December, 2021, the order of the Unemployment Compensation Board of Review dated December 18, 2020, is REVERSED. The application to take judicial notice filed by Peter D. Kolenich is dismissed as moot.

_____
MARY HANNAH LEAVITT, President Judge Emerita